By the twelfth clause of William Seabrook’s will, it is declared as follows: “ In order to make a proper provision for my children, by my present marriage, Robert Chisolm Seabrook, Joseph Edings Seabrook, Caroline La Fayette Seabrook, Martha Washington Seabrook, and Julia Geor-giana Seabrook, I will, order and direct, that my executors hereinafter named, or such of them as qualify and act on this will, shall, as soon as may be convenient, or as the same may be deemed advisable, lay out and invest the sum of one hundred thousand dollars, in the purchase of lands and negroes, for the use of my estate.” After directing that the lands and negroes, so to be purchased, together with certain other lands and negroes, should be kept together and improved to the best advantage, until his eldest child, by the present marriage, should reach the full age of twenty-one years; he then directs that all the lands of his estate, not before specifically devised, the lands and negroes, so to be purchased by his executors, and four-sevenths of the negroes which he then owned, should be divided into five equal shares among his said five children, allowing an equal portion to each of his said children ; and gave, devised and bequeathed, one of the said shares to each of his said children, as they should respee- *203 tiveiy attain the full age of twenty-one years, “ with the limitations on the lands hereinafter set forth.” After providing that the income of the shares of those under age, should fall into, and form a part of the testator’s residuary estate, and that each child, during minority, should receive “ only a proper education, and a reasonable maintenance and support, out of the income of the said estate,” he devises to each of the said children, as they, severally, and successively, reach twenty-one years of age, “ the share or portion of lands that may be allotted to them, respectively, for and during their respective natural lives ;” and from and after the deaths, severally, of the said children, to the issue of each, in the manner therein particularly declared. “ And should any, or either of my said children, respectively, depart this life, without leaving lawfully begotten issue, living at the time of his, her, or their deaths, respectively, who shall live to attain the age of twenty one years, or dying before that time, leaving lawfully begotten issue, to live until the parent, if alive, would have reached twenty-one. years of age, then the share and shares, respectively, in the said lands of such child, or children, respectively, so dying, shall revert to my estate; and I give, devise and bequeath, the share and shares of the said lands, so reverting, unto my own right heirs forever. It being my wish and will, that the shares in my lands, given to my said five children, respectively, shall go to their issue, respectively, so long as the law will permit the said lands to be so limited, and no longer. And that on the failure of their said issue, respectively, within the period so limited, the share and shares, in the said lands of such issue, and of such issues, so failing, shall revert to my estate. The issue of any one of my said five children, not inheriting, or taking under this will, from any other of my said children, except so far as on the happening of the contingencies here contemplated, they the said issue, or any or either of them, may be the right heirs of me, the said William Seabrook.”
The first question submitted for the consideration of the Court, is, whether the executors are bound to invest the sum of one hundred thousand dollars in lands and negroes, or are at liberty make the investment in such other mode as they may deem advisable. On this point, it seems on *204 ly necessary to say, that the Court concurs in the construction which the executors have, themselves, given to the lauguage of the testator. He has determined the character of the investment, and left to their discretion only the time at which it shall be made.
Joseph Edings Seabrook, one of the children by the second marriage, departed this life, under age, and unmarried, in June, 1838. It is insisted, on the part of Mrs. Seabrook, the widow of the testator, that, by the true construction of the will, ' she is entitled, as one of the right heirs of the testator, to one third of the lands which were to be allotted to Joseph Edings Seabrook; and the ten children, who survived the testator, (of whom Joseph E. Seabrook was one,) to the other two-thirds. But that, if she should be excluded as an heir of the testator, she is, in any event, entitled, as an heir of Joseph E. Seabrook, to a proportion of the one-tenth, which vested in him.
It is proposed, first, to enquire, whether any interest in the lands vested in Joseph Edings Seabrook. After the very elaborate discussion which this subject underwent, in the argument of Cholmondeley vs. Clinton, 2 Mer. 171, it would be an act of supererogation on the part of the Court, to collate the authorities which have been adduced. Certain general principles are, however, admitted in all the cases. None is more clear than that, even in the construction of deeds, the obvious intention shall prevail, provided it is not inconsistent with the settled rules of law. In one of the cases cited for the defendant, Donner vs. Parkhurst, Willes, 332, it is said by the Chief Justice, “I admit, that, though the intent of the parties be ever so clear, it cannot take place contrary to the rules of law, nor can we put words in a deed which are not there, nor put a construction on the words of a deed, directly contrary to the plainest sense of them. But where the intent is plain and manifest, and the words doubtful and obscure, it is the duty of the judges to endeavor to find out such a meaning in the words, as will best answer the intention of the parties.” It is also a rule, for the reasons stated by Mr. Justice Bailey, in Doe vs. Maxcy, 12 East. 589, not to read limitations in a will, as being a contingent remainder, unless such appears to have been clearly the intention of the tes *205 tator. But this preference of the Court, in favor of vested remainders, is never permitted to operate so as to exclude an ascertained object of the grantor’s or testator’s intention. In Holloway vs. Holloway, 5 Ves. 401, (the case on which the defendant chiefly relied,) it is said by the Master of the Rolls, “unquestionably it is competent for a testator, if he thinks fit, to limit any interest to such persons as shall, at a particular time, named by him, sustain a particular character.”
The question then, is, whether the terms, right heirs of the testator, are to be confined to those who were his right heirs at the time of his death, (in which case they took nothing by the will,) or are intended to designate a class of persons, who, on the happening of a particular contingency, would come within the description. In order to satisfy this enquiry, it is competent for the Court, and indeed, is its duty, to look through the whole instrument. The testator makes a marked distinction between his real and personal estate. In respect to the latter, an absolute estate is given to the legatees, so soon as they shall, respectively, attain the age of twenty-one years. The interest in the lands is restricted to a life estate in the first taker. And, as was observed in the argument of Long vs. Blackall, 3 Ves., an anxious desire to keep this property in his family as long as he could, is apparent, in every clause of the instrument. In the fourth clause, lands are devised to his son, George Washington Seabrook, during his natural life, with limitations to his issue; but, on failure of the issue of the said George W. Seabrook, within the time limited, then, and in that case, he devises the lands, absolutely and forever, unto the right heirs of him, the said William Seabrook, who shall be living at the time of the failure of the said issue of his son, within the time limited, as aforesaid ; “ it being my wish, as I think the lands men- . tioned in this clause' of my will, are among the best lands in the State of South Carolina, that they may remain limited in my family as long as the law will permit.” In the clause devising lands to the children of the second marriage, the desire of the testator, that the interest of the first taker should be restricted to a life estate, and that the lands should remain limited in his family as long as the *206 law would permit, is manifested by language of even a stronger character, superadded to similar limitations with those in the fourth clause. On failure of issue of either of the children, within the time limited, it is provided, that “ then the share in the said lands of such child, so dying, shall revert to my estate ; and I devise the share in the said lands, so reverting, unto my own right heirs, forever.” When a testator uses technical words, it may be presumed that he intended them to have a technical meaning and effect. Now, in case of reverter, a person who claims a fee simple by descent from one who was first purchaser of the reversion, must make himself heir to such purchaser, at the time of the happening of the contingency, when that reversion fell into possession. Fearne, 449. But the testator seems unwilling to leave this to doubtful interpretation. After declaring his wish and will, that the lands shall go to the issue, so long as the law will permit them to be so limited ; and repeating that, on failure of such issue, they should revert to his estate, he adds, “ the issue of any one of my said five children, not inheriting, or taking under this will, from any other of my said children, except so far as, on the happening of the contingencies here contemplated, they, the said issue, or any, or either of them, may be right heirs of me, the said William Seabrook.” It is difficult to conceive of terms more explicit, to exclude the idea, that any interest in the lands was to vest absolutely in any of his children, on the death of the testator, or, perhaps I may add, more clear to indicate that the persons to inherit, or take under the will, were those only, who, on the happening of the contingencies contemplated, might be the right heirs of the testator. In the judgment of the Court, Joseph Edings Seabrook took no interest in the land.
Is Mrs. Seabrook included under the discription of right heirs of the testator 1 The Court is unable to find any better difinition of an heir than the person in whom real estate vests by operation of law, on the death of one, who was last seized. This law varies in different countries— in the same country at different periods — and in the same country in relation to different estates. By the common law, the father, or grand father would be excluded. In *207 England the estate, in general, descends to the eldest son, to the exclusion of the daughters and other sons. By the laws of South Carolina, a more equitable distribution, both of real and personal estate, is provided. In order to ascertain who is the heir, it is necessary only to enquire to whom, by the law of the land, would the estate pass in case of intestacy. In England, as is said by Lord Alvan-ley, in Holloway vs. Holloway, the word ‘heir,’ as to real estate, has a definite sense ; but intimates an opinion, that as to personal estate, it must mean such person as the law points out to succeed to personal property. In Mounsey vs. Blamire 4 Russ. 384, testatrix devised a real estate to a person whom she discribed as her kinsman, and who was not her heir at law, and directed him to assume her name and arms. By a codicil she gave several pecuniary lega-gacies, and among others, “to my heir £4,000.” Three persons were her heirs at law. It was insisted that the devisee of her real estate was hares factus, and that she could not intend a bequest to three persons. On the part of the heirs at law, the present Lord Chancellor, then Mr. Pepys,, contended that this was a gift to the person or persons answering the description of her heir at law; and it would be an extraordinary construction if the court were to hold, that those are to take, who are not the heirs at law. The Master of the Rolls determined that the word heir, being no-men collectivum, woul d legally include all those who filled that character, and that the argument in favor of the ‘hares factus,’ or of the next of kin, was not well founded. The testator must be understood to speak in reference to the laws of the country in which he resides, and to include all those who answer the description of persons whom that law points out to succeed to the estate. It cannot be regarded as analogous to that class of cases in which the husband or wife have been held not to be included under the description of‘next of kin.’ In Watt vs. Watt, 3 Ves. 244, and afterwards in Nichols vs. Savage, 18 Ves. 52, this point was ruled. It was held that the husband was not next of kin’ to the wife, nor she to him, but, that, by the terms of the statute, the widow, or husband, and next of kin, were put in opposition. Without, in any manner, impugning the correctness of these decisions, but on the *208 contrary, subscribing fully, to the soundness of the reasoning, it appears to the court, that a manifest distinction exists between ‘next of kin,’ and ‘heir,’ and that no argument can be offered for excluding the husband, or wife, from the description of ‘heirs,’ which is not equally applicable to the mother, or grandfather.
■ But it was insisted, that an lieir cannot take by purchase, and that, therefore, the operation of this devise was, simply, to create a reversion, which passed under the residuary clause to others than the widow. This point was much considered in Robinson vs. Knight, 3 Eden, 93 in which, it was held, on the authority of Lord Hardwicke, in Amesbury vs. Brown, that the reversion did not pass by a residuary clause, and that, though a devise may not operate to make the heir take by purchase, yet it is in the nature of an exception, out of the residuary clause. In delivering his judgment the Lord Chancellor (Worthington,) says, “where a man disposes of his whole interest in one thing, and gives the rest and residue of his possessions to another, it is very forced and absurd to suppose, that, by the words, ‘rest and residue,’ used at the same instant, he meant a residue not existing, but which might by possibility exist.” And the reason of the distinction, in this respect, between real and personal estate, is then noticed. This decision was approved in several subsequent cases, in which it has been determined, that, although a residuary clause will extend to every latent reversion, which the testator might leave in him, unless it were expressly excluded by a devise to some other person, yet if such latter devise were to the testator’s own right heirs, who could not take under it, as the whole was a question of intention, it would equally operate as an exclusion of the residuary devisee. See note to Robinson vs. Knight.
■ The result of the examination thus far, is, that on the death of Joseph Edings Seabrook, his share of the real estate would pass to those who were then the right heirs of the testator, and that his widow would be included in that description. The enquiry remains, whether the right of the widow is excluded by the first clause of the will, in which a distinct and separate provision is made for her. It is there declared, “I will and direct, that the provision *209 herein made by me, for my said wife, shall be in lieu, and bar, and full satisfaction of, and for, all her dower, and thirds of, or in, all, or any part of, my goods, and chattels, lands, tenements, and hereditaments, and whatsoever else she may, in any manner, claim, and demand, of, in, or out of, any of my estate, real or personal.” Now, grant-that the terms, “provision herein made by me,” may refer to the whole instrument, and is not to be restricted to the first clause, I think it cannot be doubted, that the testator intended to exclude his widow from any claim she might have, by operation of law, as distinguished from the provisions of the will. If the widow could take at all under the devise, I should think, on the authority of Campbell vs. Wiggins, decided at Columbia, December, 1838, that she would take as one of a class of persons answering a particular description, according to the statute, but that the statute does not furnish the rule of apportionment and she would be entitled only to a child’s share. See Thomas vs. Hall, Ca. Temp. Tal. 250. The difficulty, however, before suggested, goes to the root of the claim. The general principle is too well settled to be now questioned, that under a devise to the heir, he can take nothing as a purchaser. On the death of Joseph Edings Seabrook, the share of the real estate, which wotdd have been allotted to him, reverted, and passed, not under the will, but by operation of law, to those who were then the right heirs of testator, of whom the court supposes the widow to be one. But this is a right which, as has been stated, she derives from the law of the land, for which she is indebted to the statute alone; which right, therefore, comes within the principle of exclusion, and upon which she cannot insist, taking, as she does, the provision made by the first clause of the will. If it be said that the widow should not be cut off, by a mere technical rule of construction, or rather legal inference, against the intention, it might, perhaps, be replied, that the case was never within the contemplation of the testator, and that the original right is only made out by the application of principles of the same character. It is altogether a question of law, and not of intention.
It is submitted, on the part of the defendant, that the *210 bequest of negroes to Joseph Edings Seabrook vested am absolute interest in him, on the death of the testator; the period of enjoyment only being postponed. On this subject the rule is sufficiently distinct. A bequest to a person “payable at, or to be paid,” at, or when, he shall attain twenty-one years of age, is a vested legacy ; but if these words are omitted, and the legacies are given at twenty-one, or if, in case of, when, or provided, the legatee attain twenty-one, these expressions annex the time to the substance of the legacy, and make the legatee’s right depend upon his being alive at the time fixed for the payment. Hanson vs. Graham, 6 Ves. 246. ■ The testator directs these lands and negroes to be improved, until the eldest child, by the second marriage, shall attain twenty-one years of age ; then, that a division shall be made into five equal shares among his five children, allotting an equal portion to each ; and he devises and bequeaths one of these five shares to each and every of his said five children, “as they, respectively, reach the full age of twenty-one, with the limitations on the land hereinafter set forth.” No allotment, even, is to be made until the eldest child of the second marriage attains twenty-one years of age, a period not yet arrived. Without more, it would be difficult to contend, that time was not of the substance of the gift.
But it is said the legatee was directed to be educated and supported from the income of the estate, of which this constituted a part, and that, by an established rule of construction, a gift of the interest for maintainance vested the legacy in the legatee. And such is the language of Mr. Fearne, 553, who gives, as a reason, that the court there considers the disposition of the interest to be an indication of the testator’s intention, that the legatee should, at all events, have the principal. See Booth vs. Booth, 4 Ves. 397. But it is equally well settled, that “if the gift of maintenance be not co-extensive with the whole amount of the interest; or if it be made out of another fund ; in neither case, will the legacies vest, prior to the arrival of the periods at which they are made payable ; for such provisions afford no presumption that the testators intended the legacies to vest before they became due.” 2 Willms. Ex’ors. 775. Pulsford vs. Hunter, 3 Bro. C. C. 416. Leake *211 vs. Robinson, 2 Mer. 387. Now the income or profits of each share, while the legatee is under twenty-one years, is not only not directed to he applied to his benefit, but it is expressly provided that it shall “fall into, and form a part of his (testator’s) residuary estate,” and is disposed of in a subsequent clause of his will. In the mean time, each of legatees, is to recieve “only a proper education, and reasonable maintenance and support out of the income of his estate.” The education and support of the legatee had no connexion with the income of the share, which he was to receive at twenty-one years of age. It was not to be measured by that income; and would be demandable from the other profits of the general estate, if the income of the share amounted to nothing.
It was also urged that the court leans against intestacy, and that, unless this bequest vested, it would create an intestacy, quoad this share, as it could not pass under the residuary clause. Without admitting the principle to the extent supposed, it may be proper to enquire whether the construction, adopted by the court,- would lead to such result. The principle cannot, perhaps ,be better stated than by Sir William Grant, in Lawbridge vs. Rous, 8 Ves. 25. “It has been long settled, that a residuary bequest of personal estate (for it is otherwise as to real) carries, not only every thing not disposed of, but every thing that, in the event turns out not to be disposed of, not in consequence of any director expressed intention; for it may be argued, in all cases, that particular legacies are separated from the residue, and that the testator does not mean, that the residuary legatee should take what is given from him: no ; for he does not contemplate the case: the residuary legatee is to take only what is left; but that does not prevent the right of the residuary legatee. A presumption arises for the residuary legatee against every one except the particular legatee. The testator is supposed to give it away from the residuary legatee, only for the sake of the particular legatee.” It was in that case, also, contended, that the bequest of the residuary estate, “whether in money or the public funds, or other securities, of any-kind, or sort whatsoever,” could not carry plate, diamonds, furniture <fec. of which an ineffectual particular bequest had been previous *212 ly made. But it was held that these were not words of restriction. “They are rather words of enlargement. The object was to exclude nothing. Such an enumeration under a videlicit, a much more restrictive expression, has been held only a defective enumeration, not a restriction to the specific articles.” Without repeating the 14th and 15th clauses of the testator’s will, it seems only necessary to apply to them these principles, in order to determine that they include the bequest of negroes, lapsed by the death of Joseph Edings Seabrook.
The remaining question for the judgment of the court is, whether the general residuary clauses, last adverted to, are repealed, or only modified, by the codicil to the testator’s will. The court has experienced much difficulty and embarrassment in endeavoring to ascertain what was the object of the testator, and is not now quite satisfied whether the intention of the codicil, was to make an entirely different disposition of the residuary estate, or only to vary the direction of a comparatively inconsiderable portion of it.
The will was prepared with great care, and executed with apparent deliberation, on 21st of January, 1836. The codicil, dated less than three months afterwards, does not purport to be a revocation of the will, but, referring particularly to that instrument, declares, that it shall have equal force with the will. The bequest to the charity school of St. John’s, Colleton, of twenty thousand dollars, is declared ‘null and void,’ a general legacy of ten thousand dollars is given to the executors, in trust for that school. The sum of five thousand dollars is given to the church ; and •'a like sum to friend. It is then declared “as there will be a large amount of stock and money remaining, after all the specific legacies under my will, and this codicil, áre satisfied, I, therefore, give, devise and bequeath all the said remaining stock and money, of whatever amount it may be, to be equally divided among my ten children (by name) share and share alike, to them and their heirs forever, immediately after the legacies specified in my will, and this codicil, are satisfied.”
It seems not unlikely that between the date of the will and the execution of the codicil, the sales of the testator’s *213 crop had been received. Instead of leaving the sum of twenty thousand dollars to be raised out of a particular fund, and in making the bequest depend on the adequacy of that fund, as was provided in the will, he disposes of that amount absolutely, and, having assertained that his stock and money on hand would be ample to pay that and the other legacies, he directs an immediate distribution of the surplus of the stock and money, so soon as the legacies were satisfied. From the best consideration, which the court can bestow on the subject, it appears that the codicil was not intended to affect the general residuary disposition, but that the terms be restricted to the state of things, existing at the death of the testator.
On the subject of repairs to the mansion house, it is agreed by the parties, and such is the judgment of the court, that for ordinary repairs, the tenant for life is alone responsible ; the charge for improvements of a permanent character is to be borne, one third by the life tenant, and two thirds by those entitled in remainder
The account current, of the acting executor with the estate, has been submitted to the proper officer of the court, and his report verifying the correctness of the account, is hereby confirmed. It remains only for the court to add, at the request of Mrs. Seabrook, that the transactions of the acting executor, in the management of the estate, and in the submission of the points of difficulty to the judgment of this tribunal, have been entirely satisfactory, and well calculated to preserve and perpetuate the harmony and good feelings enjoined in the parting language of the testator.
It is ordered and decreed, that the executors carry into effect the provisions of the will, upon the principles herein stated, with leave to apply, from time to time, for fm> ther directions in the discharge of their trust, and that the costs of this suit, be paid out of the estate.
From the foregoing decree the defendants appealed, on the subjoined grounds.
1. That by the legal construction of the testator’s will, Mrs. Elizabeth E. Seabrook, the testator’s widow, is entitled under the Act of 1791, as one of the right heirs of the testator, to one third of the lands devised to Joseph Edings Seabrook, and the ten children who survived the *214 testator (of whom Joseph E. Seabrook was one) to the other two thirds.
2. But should she be excluded, as one of the right heirs of the testator', from taking such third part of the said lands, the said Elizabeth E Seabrook is, in any event, entitled as an heir of Joseph E. Seabrook, to a proportion of the one tenth part thereof which vested in him, as one of the right heirs of the testator.
3. That the provision made by the testator, for Mrs. Elizabeth E. Seabrook, his widow, did not exclude her from taking any part of the estate which might descend to, or be cast upon her, by operation of law.
4. That Joseph E. Seabrook took an absolute, vested interest in one fifth part of the negro slaves, bequeathed by the testator to his five younger children, with the right of future enjoyment, and that the time (to wit, the attaining twenty-one years,) was annexed to the period of delivery, and not to the substance of the legacy itself.
5. That the “subsequent income” of the estate, derived from the investment of the portions of the testator’s five younger children, until the eldest attains the age of twenty-one years, falls into the residue referred to in the codicil, and being “money” passes under the residuary clause of the codicil, and is distributable among all the testator’s children, including Joseph E.' Seabrook.
6. That the residuary clause of the codicil repealed, or modified, the residuary clause of the testator’s will,